## Case No. 8,862.

### McKIM v. PHOENIX INS. CO.

[2 Wash. C. C. 89.] [1]

Circuit Court, D. Pennsylvania. April Term, 1807.

MARINE INSURANCE — OPEN POLICY — SECOND INSURANCE — LIABILITY — WAIVER OF ABANDONMENT.

1. A policy was underwritten by the Philadelphia Insurance Company, on goods on board the Ann, at and from Baltimore to Jeremie, and at and from thence to Baltimore, 12,000 dollars, valued. After the arrival of the Ann in the West Indies, the owner was informed, by a letter from the captain, that the return cargo would be 112,000 pounds of coffee; and insurance was made by the defendants, stating the cargo at 125,000 pounds of coffee, valued at twenty-two cents per pound, from which was to be deducted 12,000 dollars, insured in the Philadelphia Insurance Company. A total loss took place, and the Philadelphia Insurance Company paid the loss, by compromise, waiving an abandonment. The policy underwritten by the Philadelphia Insurance Company, must be considered as open on the homeward cargo.

2. The policy underwritten by the defendants, does not bind them to cover the whole cargo, valued at twenty-two cents per pound, deducting the sum previously insured.
[Cited in Murray v. Insurance Co. of Pennsylvania, Case No. 9,961.]

3. The defendants were not bound to resort to the insurance office in which the first policy was made, to ascertain the precise nature of the same.

4. By the policy made with the Philadelphia Insurance Company, the underwriters had, in case of loss, a right to as much of the cargo as would, at prime cost, amount to 12,000 dollars; and the second policy, in respect thereto, was void.
[Cited in Murray v. Insurance Co. of Pennsylvania, Case No. 9,961.]
[Cited in Deming v. Merchants' Cotton Press, etc., Co., 90 Tenn. 306, 17 S. W. 97.]

5. The waiver of an abandonment by the Philadelphia Insurance Company, did not affect the relations between the plaintiff and the defendants.
[Cited in Murray v. Insurance Co. of Pennsylvania, Case No. 9,961.]
[Cited in Ryder v. Phoenix Ins. Co., 98 Mass. 192.]

The case states, that on the 27th of November, 1803, the plaintiff effected insurance in the Philadelphia insurance office, on goods on board the Ann, at and from Baltimore to

Jeremie, with liberty to touch at one other port at the West Indies, and at and from thence back to Baltimore; 12,000 dollars insured. A written memorandum was subscribed at the bottom, by which it was declared that the insurance was on flour, dry goods, wine, and provisions, &c. &c., valued at 12,000 dollars, clear of premium. The invoice contained the above articles, and some others of no great value, such as candles, tobacco, &c. The plaintiff, after the arrival of the vessel at her port in the West Indies, received a letter from his captain, informing him of the sale of the outward cargo; that he had then on board about 60,000 pounds of coffee, and expected to take in about 112,000 pounds, probably more. Upon receiving the letter, the plaintiff, in December, 1803, directed his agent to insure the return cargo, estimating it at 125,000 pounds of coffee, valued, as concerns this risk, at twenty-two cents per pound: from which was to be deducted 12,000 dollars, insured in the Philadelphia insurance office, which would leave 15,500 dollars to be covered. The agent made out his order on this letter of instructions, and carried it to the office of the defendants, where the risk was underwritten upon the terms mentioned; at and from Jeremie to Baltimore, being on coffee shipped, to be valued at twenty-two cents per pound. A total loss having taken place on the homeward voyage, the plaintiff gave notice to the Philadelphia and Phoenix offices, and offered to abandon, and to make such cessions as might be proper. The Philadelphia office insisted upon a cession of the whole cargo, which was refused by the plaintiff; the defendants, understanding the nature of the first policy, or from some other cause, refused the abandonment. After this suit was brought, the plaintiff compromised with the Philadelphia insurance office, and gave up his claim of interest, they consenting to pay the principal, and not to require any cession. Instead of 125,000 pounds of coffee, the vessel took in only about 113,000 pounds.

Tilghman and Lewis, for plaintiff, contended that the policy on the return voyage was open, and that the defendant being informed of the prior insurance, which it was his duty to examine, and agreeing to value the whole cargo shipped, at twenty-two cents per pound, did, in effect, agree to pay what might remain of the value of the whole cargo at that price; after deducting the 12,000 dollars, previously insured.

For the defendant, it was insisted, by Rawle and Ingersoll, that the voyage insured in the Philadelphia office, was out and home; and if the outward voyage was valued, which must be admitted, so too must have been the homeward voyage. If so, the whole being valued at 12,000 dollars, the plaintiff had no interest left to insure with the defendant: and of course the second policy, by the express terms of it, was void.

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

That the valuing the property at risk, is merely to save the trouble of proving it; and that the case must be considered precisely as if the cargo was really worth only 12,000 dollars; of course, there was nothing left to insure by the second policy. The plaintiff, in case of loss, must have abandoned all to the Philadelphia office, and had nothing left to abandon to the defendants; that the defendants were not obliged to examine the first policy, because it was referred to; particularly as the order was calculated to induce in them a belief, that in the first policy, the whole cargo was valued at twenty-two cents per pound. Strictly, then, the plaintiff can recover for no part of the cargo; but, at any rate, he can recover no more than the premium estimated in coffee, at prime cost, and then turned into coffee again, at twenty-two cents per pound. The question submitted is, on which principle is the loss to be settled?

WASHINGTON, Circuit Justice. The first thing to be clearly and distinctly understood, is the nature and extent of the contract between these parties. The defendants have underwritten 15,500 dollars on the cargo of this vessel, at and from Jeremie to Baltimore, valuing every American pound weight of coffee, shipped on board, at twenty-two cents; but it was also agreed, that if the plaintiff should have made a prior insurance upon the cargo so shipped, these defendants should be answerable only for so much as the amount of such prior insurance might be deficient towards fully covering the premises, such amount being understood to be the whole sum so underwritten; and that the policy, so far as property had been previously insured, should be considered as null and void; and the premium to be returned on so much of the sum so insured, as the defendants were exonerated from by such prior insurance. The defendants then insured only the property which was uncovered by any prior insurances. This leads to the inquiry, what part of the cargo from Jeremie to Baltimore, had been previously insured; and how much, if any, remained to be covered by this policy? Twelve thousand dollars, clear of premium, had been underwritten in the Philadelphia insurance office, on the cargo of this vessel, at and from Baltimore to Jeremie, and back again; and the important question is, whether this latter policy covered the whole, or what part of the return cargo? The plaintiff contends, in the first place, that the first policy covers 12,000 dollars out of 24,847 dollars and 46 cents, the value of the whole cargo of coffee, at twenty-two cents per pound; and, on the other hand, it is insisted, by the defendant, that, in strictness, the whole cargo is covered by the first policy.

The arguments on which the plaintiff founds his first claim, are, that the policy, though a valued one on the outward voyage, is open as to the return cargo; and that the defendants having been apprized of the first insurance,

which covered as much coffee only as the 12,000 dollars would purchase at twenty-two cents per pound, they consented to cover the balance of the plaintiff's interest in the whole cargo; which, valuing the coffee at twenty-two cents per pound, the price it would in the plaintiff's estimation be worth here, would have amounted to 15,500 dollars, the sum insured, if 125,000 pounds had in fact been shipped. To prove that the defendants knew and had it in their power to examine particularly the terms of the prior policy, and that they were content to make this special contract, reference was made to the order for insurance, which desires insurance to be made "on the homeward cargo, consisting of coffee, valuing the same at twenty-two cents per pound, as interest may appear on board, say 125,000 pounds, American weight, valued, as far as respects this risk, at twenty-two cents, is 27,500 dollars, out of which deduct the sum already insured in the Philadelphia insurance office, on the homeward cargo, 12,000 dollars;" which leaves 15,500 dollars yet to be insured, at and from Jeremie to Baltimore. Each and every pound of coffee which may be shipped on board, shall be valued at twenty-two cents per pound.

The plaintiff's counsel are, in the opinion of the court, perfectly correct in contending that the policy effected in the Philadelphia insurance office, is open on the homeward cargo. If the written memorandum had not been added, it cannot be denied but that the policy on the outward and homeward voyage would have been open; and it is not less undeniable, that the written clause which fixes the value, is confined to the enumerated articles, and any others which could properly be included in the et caetera. The enumerated articles are such as must have been understood to constitute the outward cargo, and by the invoice we find, that in fact they did constitute that cargo. If there were no other articles on board to satisfy the et caetera, we should, nevertheless, require strong authorities to convince us, that an entire cargo, constituting the whole property which might be brought back, was intended to be covered under an et caetera; when, in the same clause, so particular an enumeration had been made of the articles which constituted the bulk of the cargo. But there is no room for giving such a construction to the et caetera in this case, as we find in the invoice of the outward cargo, a variety of articles not enumerated, of no great value, and such as are worthy of being covered by an et caetera. This construction is greatly strengthened by considering how unlikely and how unusual it is, to value a cargo, the amount and value of which is at the time totally unknown to the insured. This point being established, what follows? The plaintiff's counsel say that the defendants have specially agreed to cover the whole cargo, valued at twenty-two cents per pound, deducting therefrom only the 12,000 dollars insured by the first policy. To this

conclusion the court cannot assent. If the written clause were so express and plain, as to leave no doubt that such was the intention of the parties; and if it appeared that the defendants were fully informed as to the nature of the first insurance, this clause would control the printed clause, important as it is considered by all the insurance offices in this city. Every presumption is against such an intention, and the evidence to prove it ought to be extremely clear and strong. The words, "every pound of coffee shipped, or to be shipped," taken in reference to the words in the order, "valued, as far as respects this risk, at twenty-two cents per pound," and so stating the amount from which the 12,000 dollars was to be deducted, amounted to so plain a declaration that the cargo had been previously valued at twenty-two cents per pound, as to leave no doubt concerning the intention of the defendants, at least. if not that of the plaintiff. But it is said that the defendants, having been apprized of the first insurance, were bound to examine it, or to take the consequences of their negligence in not doing so. But we answer, that if, in any case, the underwriters are, upon such information, bound to run from office to office to examine papers thus referred to, they were not bound to do so in this case; when the plaintiff spoke a language respecting the nature of the first policy, if not too plain to be misconstrued, yet such at least as was sufficient to mislead. The order of insurance plainly intimates that only 12,000 dollars were to be deducted from the whole amount of the cargo, whereas it is admitted that in case of loss, the first underwriter would, upon abandonment, have been entitled to so much of the cargo as 12,000 dollars would have absorbed, at prime cost and charges; and the plaintiff would have been entitled to claim the value of the same proportion of the cargo. The defendants, therefore, were clearly misled by the manner in which the first insurance was represented to them. If these were the rights of the parties under the first policy, it follows, that so much of the cargo was covered thereby, as 12,000 dollars would purchase at prime cost and charges; and consequently the second policy, in respect thereto, was, by the terms of it, void. The defendants, then, are answerable only for so much of the coffee as remains after this deduction is made, at the price of twenty-two cents per pound. Upon the happening of the loss, the plaintiff could certainly have abandoned no more to the defendants, which proves that no more was insured. It is unnecessary to decide, whether an underwriter may, by an express agreement made at the time the contract of insurance is concluded, bind himself to run the risk of a technical total loss, and yet relinquishing all his right to the thing insured, should any thing be saved; because, in this case, there is nothing which, in any respect, amounts to such an agreement.

This argument on the part of the defendants, cannot be got rid of by the agreement of the Philadelphia Insurance Company, after the loss, to waive all their right to the property which might be saved; because, at the time this policy was signed, it was, by the terms of it, void, except as to the property uncovered by the first; and no future circumstance could give it life, as to the other property, without the consent of the other party to the contract.